UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MAUREEN LUGO,

                Plaintiff,

-against-

LIBERTY LIFE ASSURANCE COMPANY
OF BOSTON

                Defendant.

**05 CIV. 6776**

**COMPLAINT**

**Jury Trial Demanded**

ECF CASE

BRIEANT

      Plaintiff, Maureen Lugo, by her attorneys, Foulke Law Offices, allege for her complaint against defendant, LIBERTY LIFE ASSURANCE COMPANY OF BOSTON ("LIBERTY MUTUAL"), as follows:

### JURY DEMAND

1.     Plaintiff demands a trial by jury of all issues.

### NATURE OF ACTION

2.     This action arises under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 et seq. ("ERISA") and more particularly, Sections 404, 409, and 502 of the Act, 29 U.S.C. §§ 1104, 1109, and 1132.

### THE PARTIES

3.     The plaintiff Maureen Lugo is a resident of the Village of Wurtsboro, County of Sullivan, and State of New York.

4.     Plaintiff Maureen Lugo was employed by FleetBoston Financial Corp. ("Fleet Bank") as a sales assistant located in the Borough of Glen Rock, County of Bergen, and State of New Jersey.

5.     As an employee of Fleet Bank, Maureen Lugo was provided with long term

disability benefits pursuant to the terms of a group long term disability insurance policy issued by Liberty Mutual.

6. At all relevant times, Liberty Mutual was and presently is duly authorized to transact business in the State of New York and is in fact transacting business in the State of New York, with an office at P.O. Box 1507, Dover, NH 03821-0000.

7. At all relevant times, defendant Liberty Mutual was and is an insurance company that sold policies of disability insurance pursuant to a group plan with Fleet Bank which provided, among other forms of coverage, long term disability insurance to employees at Fleet Bank.

8. Maureen Lugo commenced her employment with Fleet Bank on or about January 1, 1980. At all relevant times, Mrs. Lugo was an employee of Fleet Bank or its successors, insured pursuant to the group plan for long term disability benefits under Liberty Mutual's long term disability insurance policy.

9. Benefits are due and vested under the group plan and long term disability policy with Liberty Mutual. At all relevant times, Maureen Lugo complied with all conditions necessary for her to receive benefits based on her disability and is a participant in and beneficiary of said policy.

## JURISDICTION AND VENUE

10. This Court has jurisdiction under 29 U.S.C. § 1001 et seq., particularly Sections 502(e) and (f) of ERISA 29 U.S.C. § 1132(e)(f).

11. Venue is proper in the Southern District of New York pursuant to § 502(e)(2) of ERISA 29 U.S.C. § 1132(e)(2) since the plan is administered in this district and the defendant may be found here. Venue is also proper in the Southern District of New York pursuant to Title 28, U.S.C. § 1391.

## FACTS RELATING TO THE LIBERTY MUTUAL POLICY

12. Liberty Mutual, for good and valuable consideration, sold, executed and delivered to Fleet Bank, a group long term disability insurance policy (the "Liberty Mutual Policy"). The Liberty Mutual Policy was issued on printed forms prepared by defendant Liberty Mutual.

2

13. The Liberty Mutual Policy was in full force and effect during all relevant times stated here within.

14. At all relevant times, Fleet Bank established an Employee Welfare Benefit Plan (the "Plan") pursuant to ERISA.

15. At all relevant times, Mrs. Lugo was an employee of Fleet Bank and insured pursuant to the Plan for long term disability under the Liberty Mutual Policy.

16. Mrs. Lugo was covered under the terms of the Liberty Mutual Policy at the time her disabling condition commenced.

17. Liberty Mutual incorrectly presumes that Mrs. Lugo's occupation is within her current capabilities.

19. Liberty Mutual incorrectly presumes that Mrs. Lugo has a duty to submit to back surgery with risk of "death, paralysis, bleeding, infection, lack of success, lack of improvement and recurrence," and with only an "80% chance of getting 80% better."

## MRS. LUGO'S TOTAL DISABILITY

20. In February of 2003, Mrs. Lugo was employed as a sales assistant for Fleet Bank located in the Borough of Glen Rock.

21. In approximately February 2003, while attempting to catch her ailing mother-in law in her arms, Mrs. Lugo felt a "popping."

22. At the time Mrs. Lugo experienced severe pain, among other things and was subsequently unable to return to work.

23. In approximately April 9, 2003, an MRI confirmed that Mrs. Lugo suffered from a "diffuse broad based herniation [of a spinal disc] at L5-S1 with bilateral moderate neuroforaminal stenosis," and that the herniation also flattens the ventral portion of the thecal sac.

24. In approximately April 25, 2003, Daniel Spitzer, M.D., a neurosurgeon, discussed the risks of surgery with Mrs. Lugo, including "death, paralysis, bleeding, infection, lack of success, lack of

3

improvement, and recurrence," and felt that he could offer no more than "an 80% chance of getting 80% better."

25. In approximately August 1, 2003, Mrs. Lugo was also diagnosed through a nerve conduction study with a positive S1 radiculopathy.

26. Mrs. Lugo suffers from neck pain, lower back pain, weakness on her left side, and numbness on her left side including her face and scalp. She also suffers from an inability to concentrate.

27. Mrs. Lugo suffers from constant, severe pain, including severe radicular pain radiating down her left leg.

28. Mrs. Lugo has characterized her pain as between seven and ten on a scale of zero to ten, with ten being the most severe.

29. Mrs. Lugo cannot walk, sit, stand or drive for more than ten to fifteen minutes at a time, and can no longer swim or walk for exercise.

30. Due to her limited ability to walk and stand and her inability to bend, squat or lift anything Mrs. Lugo cannot cook, clean, or do laundry, and she cannot tie her shoes or bathe without assistance.

31. Mrs. Lugo's balance is impaired due to the numbness in her left leg and foot.

32. Even with medication, Mrs. Lugo is "unable to get comfortable and sleep through the night" and her inability to sustain proper rest inhibits all of her daily functions

33. Mrs. Lugo's ability to concentrate is so impaired that she can no longer enjoy conversations with family and friends, or even a book or television program.

34. Mrs. Lugo's condition has failed to improve with time.

35. Mrs. Lugo could not even manage the ninety-minute commute to her job, let alone the sitting, standing, lifting, squatting, walking, bending and computer work that the job entails.

36. As a result of her condition, Mrs. Lugo is totally disabled and completely unable to engage or participate in a working position.

37. Despite the fact that Mrs. Lugo's condition has failed to improve, Liberty Mutual wrongfully maliciously, and inappropriately denies Mrs. Lugo long term disability benefits in contravention of its obligations under the Policy.

38. On or about July 30, 2003 Mrs. Lugo requested long term disability benefits in accordance with the Liberty Mutual Policy.

39. By a letter dated September 8, 2003, Liberty Mutual wrongfully and maliciously denied Mrs. Lugo's request for long term disability benefits under the Policy.

40. On or about February 11, 2004, pursuant to the policy established and set forth by Liberty Mutual, Mrs. Lugo submitted an appeal of Liberty Mutual's wrongful and malicious decision to deny her coverage.

41. By a letter dated May 7, 2004, Liberty Mutual affirmed its wrongful decision to deny Mrs. Lugo benefits that she was properly entitled to.

42. Liberty Mutual's May 7, 2004 letter affirming its wrongful decision to deny benefits sets forth obvious pretext and innuendo as the basis for denial of benefits which includes incorrect factual assumptions used as the basis of the erroneous decision.

43. Liberty Mutual did not properly consider submitted medical opinions that Mrs. Lugo is disabled, unable to work, and should be eligible for long term disability.

44. Instead, Liberty Mutual maliciously and in bad faith, wrongfully and inaccurately asserted that Mrs. Lugo would be able to perform the duties of her occupation within the restrictions that she suffers from.

45. Liberty Mutual's conclusions are based solely upon the opinion of a physician who has never examined Mrs. Lugo, and upon a surgeon's recommendation that if "she was sufficiently incapacitated that she could not work" she should subject herself to surgery involving the risk of "death, paralysis, bleeding, infection, lack of success, lack of improvement and recurrence," and with only an "80% chance of getting 80% better."

5

46. Liberty Mutual's conclusions are in complete and malicious disregard of the determinations of Mrs. Lugo's primary care physician and her physiatrist, and of her subjective physical complaints.

## **THE TERMS OF THE POLICY**

47. Liberty Mutual, for good and valuable consideration, sold, executed and delivered to Fleet Bank a group long term disability insurance policy. The Policy was issued on printed forms prepared by defendant Liberty Mutual.

48. On information and belief, the Liberty Mutual Policy was effective at all times mentioned herein and provides that:

> "[the Policy] delivered and governed by the laws of the governing jurisdiction and to the extent applicable by the Employee Retirement Income Security Act of 1974 (ERISA) and any amendments".

49. On information and belief, the Liberty Mutual Policy was renewable periodically and the Liberty Mutual Policy has been continuously renewed and remains in full force.

50. Maureen Lugo was covered under the terms of the Liberty Mutual Policy at the time she first became unable to work and in July 2003 when she first applied for disability benefits under the terms of the Liberty Mutual Policy.

51. Mrs. Lugo notified Liberty Mutual of her continued inability to work and requested disability benefits in accordance with the definitions contained in Liberty Mutual's long term disability policy. By a letter dated September 8, 2003, Liberty Mutual denied payment of long term disability benefits under the terms of her Liberty Mutual Policy.

52. The Liberty Mutual Policy's Summary Plan Description provides as follows:

> Disability and disabled mean that, because of injury or illness:
>
> 1. During the first 24 months of benefits, you cannot perform each of the material and substantial duties of your occupation as an active employee.
> 2. After benefits have been paid for 24 months, you cannot perform with reasonable continuity, all of the material and substantial duties of your own

      or any other occupation for which you are or become reasonably fitted by training, education, experience, age, and physical and mental capacity.

3.  Partial disability or partially disabled means as a result of an injury or illness, which caused disability, you are:
   i. Able to perform one or more, but not all, of the material and substantial duties of your own or any other occupation as an active employee or on a part-time basis,
   ii. Able to perform all of the material and substantial duties of your own or any other occupation on a part-time basis.

53.  The Liberty Mutual Policy defines "Sickness" as illness, disease, pregnancy or complications of pregnancy.

54.  Commencing on or about February of 2003 and continuing through the present time, Mrs. Lugo has been unable to perform each of the material duties of her regular occupation and of any gainful occupation for which she is reasonably fitted by training, education or experience.

55.  Mrs. Lugo is disabled as defined by the terms of the Liberty Mutual Policy.

56.  Mrs. Lugo's condition has not improved.

57.  Additionally, Mrs. Lugo's treating healthcare providers provided Liberty Mutual with dated reports concerning the nature and extent of her disability and the progression of her ailments.

58.  Notwithstanding Liberty Mutual's knowledge of Mrs. Lugo's condition, Liberty Mutual wrongfully, maliciously, and in bad faith denied Mrs. Lugo's request for long term disability benefits by a letter dated September 8, 2003.

59.  In connection with its decision to deny benefits, Liberty Mutual wrongfully and maliciously ignored the determination by Ciro Attardo, M.D., Mrs. Lugo's primary care physician, that Mrs. Lugo was totally disabled.

60.  In connection with its decision to deny benefits, Liberty Mutual wrongfully and maliciously relied on Daniel Spitzer, M.D.'s recommendation that if Mrs. Lugo was sufficiently incapacitated that she could not work she should submit to surgery without acknowledging that such surgery, per Doctor Spitzer's consultation with Mrs. Lugo, carried with it the threat of "death, paralysis,

bleeding, infection, lack of success, lack of improvement, and recurrence," and offered only an "80% chance of an 80% improvement."

61. Mrs. Lugo appealed Liberty Mutual's September 8, 2003 decision.

62. By letter dated May 7, 2004, Liberty Mutual wrongfully and maliciously affirmed their decision to terminate benefits.

63. Liberty Mutual's affirmation of denial was wrongly and maliciously based upon the review of the claim file by a physician who had never met, let alone examined Mrs. Longo, and had therefore been in no position to evaluate the amount of pain, discomfort and actual disability that Mrs. Longo suffers.

### FIRST CAUSE OF ACTION AGAINST LIBERTY MUTUAL FOR WRONGFUL DENIAL OF LONG TERM DISABILITY BENEFITS

64. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 63 as if set forth in full herein.

65. All conditions precedent to the commencement of this action have been met and Maureen Lugo has fully performed all of her obligations to Liberty Mutual under the plan and under the Liberty Mutual Policy.

66. Maureen Lugo has properly and completely exhausted all of her administrative remedies under the plan. Defendant Liberty Mutual wrongfully denies and refuses Maureen Lugo's claim for insurance benefits despite the demand, despite no change in condition, and despite her inability to work.

67. Maureen Lugo has been treated wrongfully and unfairly by defendant MetLife and in violation of Section 502, 404 and 409 of ERISA 29 U.S.C. §§ 1132, 1104, and 1109, as well as in violation of applicable plan documents and related policies in effect.

68. Moreover, the decision of Liberty Mutual to deny Maureen Lugo's long term disability insurance benefits under the terms of the plan and under the terms of the Liberty Mutual Policy was made in bad faith and in violation of ERISA.

69. Maureen Lugo asserts this claim pursuant to Section 502 of ERISA, 29 U.S.C. § 1132 to recover the long term disability insurance benefits due under the plan and to enforce her rights of the Liberty Mutual Policy under the plan.

70. As a direct and proximate result of defendant Liberty Mutual's action, Maureen Lugo has been caused to incur substantial attorney's fees and costs in an amount not currently known.

71. Pursuant to Section 502(g) of ERISA, 29 U.S.C. § 1132(g), Maureen Lugo is entitled to recover her attorney's fees and costs incurred in bringing this action to right the wrong done to her by defendant Liberty Mutual.

72. As a direct and proximate result of defendant Liberty Mutual's actions and by virtue of Liberty Mutual's breach of its contractual obligations under the Liberty Mutual Policy to pay Maureen Lugo for a covered loss, Liberty Mutual is liable to Maureen Lugo in the amount of her claim for monthly benefits from August 2003 through present, together with interest as allowed by law and attorney's fees.

## SECOND CAUSE OF ACTION FOR
## ESTOPPEL AGAINST LIBERTY MUTUAL

73. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 63 as if set forth in full herein.

74. On information and belief, Liberty Mutual, as at all times mentioned herein, accepted timely payment of premiums for Mrs. Lugo's long term disability coverage for the entire time of her employment beginning in approximately January 1980, making Mrs. Lugo eligible for long term disability coverage.

75. Liberty Mutual wrongfully, maliciously, and improperly denied benefits to Mrs. Lugo in September 2003, in breach of its obligations under the Policy and under ERISA.

76. Based upon Liberty Mutual's correspondence with Mrs. Lugo, Liberty Mutual acknowledges and admits its obligations under the plan.

77. Mrs. Lugo has reasonably relied to her detriment on her deserved payment of benefits promised to her by Liberty Mutual under the Policy and justice demands that said promise be enforced.

78. By virtue of the actions of Liberty Mutual, and its agents, servants, employees, and a consequent reliance by Mrs. Lugo, Liberty Mutual is estopped in asserting that Mrs. Lugo is not entitled to payment by Liberty Mutual of long term disability benefits.

## THIRD CAUSE OF ACTION
## FOR DECLARATORY JUDGMENT

79. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraph 1 through 63 as if set forth in full herein.

80. Maureen Lugo seeks a declaration that she is permanently disabled pursuant to Liberty Mutual's long term disability policy and is entitled to long term disability benefits each month until the age of 65 and beyond as appropriate.

## FOURTH CAUSE OF ACTION AGAINST
## LIBERTY MUTUAL FOR ATTORNEY'S FEES

81. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraph 1 through 63 as if set forth in full herein.

82. In violation of Section 409 of ERISA, 29 U.S.C. § 1109, defendant Liberty Mutual has breached its responsibilities and obligations under the plan to employees of Fleet Bank, including Maureen Lugo. This breach of Liberty Mutual's duty of good faith, skill, prudence and diligence is described above.

83. As a direct and proximate result of defendant Liberty Mutual's actions, Maureen Lugo has been caused to incur substantial attorney's fees and costs in an amount not currently known.

84. Pursuant to Section 502(g) of ERISA, 29 U.S.C. § 1132(g), Maureen Lugo is

entitled to recover her attorney's fees and costs incurred in bringing this action to right the wrong done to her by defendant Liberty Mutual and in treating her in bad faith.

### FIFTH CAUSE OF ACTION AGAINST LIBERTY MUTUAL FOR PAYMENT OF INTEREST

85. Plaintiff was entitled to timely payment of long term disability benefits upon her first request.

86. Said benefits were unjustly denied by defendant Liberty Mutual.

87. Continued non-payment of benefits to which Plaintiff is entitled has denied Mrs. Lugo the full value of what was promised her, and afforded Liberty Mutual an unjust enrichment.

88. In addition to other remedies requested, an award of interest to Mrs. Lugo will provide an equitable make-whole remedy for this non-payment under § 502(a)(3)(B) of ERISA, 29 U.S.C. § 1132(a)(3)(B).

WHEREFORE, plaintiff Maureen Lugo, respectfully requests the Court to enter an Order granting the following relief:

(1) Upon the First Cause of Action against Liberty Mutual entering an award of judgment in favor of the plaintiff against defendant Liberty Mutual for the amount of Maureen Lugo's monthly disability benefits in amounts owed under the terms of the plan August 2003 until present, together with interest as allowed by law.

(2) Upon the Second Cause of Action against Liberty Mutual declaring that Liberty Mutual is estopped from asserting that Mrs. Lugo is not entitled to Liberty Mutual's long term disability benefits;

(3) Upon the Third Cause of Action against Liberty Mutual for an order, award and judgment declaring that Maureen Lugo is permanently disabled pursuant to Liberty Mutual's Occupational Disability Policy and is entitled to long term disability benefits in a monthly amount to be determined by the Court, each month until the age 65, and beyond as appropriate;

(4) Upon the Fourth Cause of Action against Liberty Mutual for reasonable attorney's fees, costs and disbursements incurred in prosecuting this action, and any other attorney's fees and disbursements approved by the Court;

(5) Upon the Fifth Cause of Action against Liberty Mutual for interest as the Court deems just and proper on benefits past-due Mrs. Lugo.

(6) For such other and further relief as the Court deems just and proper under the circumstances including interest and attorney's fees.

Dated: Goshen, New York
July 22, 2005

By: *[signature]*

FOULKE LAW OFFICES

Evan M. Foulke, Esq.
Attorneys for Plaintiff
1997 Route 17M
P.O. Box 239
Goshen, NY 10924
845-294-4308

TO: Liberty Life Assurance Company of Boston
Integrated Disability Management
P.O. Box 1507
Dover, NH 03821-0000